No. 24,893.

J. H. THARP, as Administrator, etc., *Appellant*, v. JESSE LANGFORD,
as Sheriff, etc., *Appellee*.

### SYLLABUS BY THE COURT.

INJUNCTION—*Judgments—Half Interest Assigned to Attorney—Kept Alive by
Successive Executions.* The evidence examined and held sufficient to sus-
tain a finding of the trial court that a half interest in some old judgments
had been assigned to an attorney who kept them alive by successive execu-
tions; and held that notwithstanding the dissolution of the corporate judg-
ment creditors and the death of an individual judgment creditor, such as-
signments of a half interest in the several judgments gave the assignee the
power and right to cause executions to be issued from time to time to pre-
vent the judgments becoming dormant.

Appeal from Reno district court; CHARLES M. WILLIAMS, judge *pro tem.*
Opinion filed January 12, 1924. Affirmed.

*Ray H. Tinder,* of Wichita, *Carr W. Taylor,* and *John H. Connaughton,*
both of Hutchinson, for the appellant.

*Walter F. Jones,* of Hutchinson, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: Plaintiff brought this action to enjoin the defendant
sheriff from levying on plaintiff's property to enforce collection of
four old judgments, viz.:

(1) "W. G. Frye Manufacturing Company v. H. Snyder, judgment on ac-
count in favor of the plaintiff in the sum of $83.83 entered June 20th, 1905.
Executions issued as follows: January 18, 1910, no return; May 23, 1914, re-
turn May 26, 1914, no property; February 3, 1919, no return."

(2) "O. H. Johnson v. H. Snyder. Judgment for the plaintiff in the sum
of $164.32 on July 11th, 1905; executions were issued as follows: January 14,
1910, return February 13, 1919, no property; May 23, 1914, shows no return;
March 13, 1919, return March 21, 1919, no property."

(3) "Phil Carey Manufacturing Company. Judgment upon account in
favor of the plaintiff for $195.85, rendered October 18, 1905, executions issued
as follows: January 14, 1910, no return; May 23, 1914, return May 26, 1914, no
property; February 3, 1919, no return."

(4) "Arthur Gourley Company v. H. Snyder, judgment upon a note in the
sum of $250.00 rendered in favor of the plaintiff on July 5th, 1906. Executions
issued as follows: January 14, 1910, no return; May 12, 1914, returned May
26, 1914, no property; February 3, 1919, no return."

Plaintiff alleged that these judgments had become dormant; that
three of the judgment creditors were corporations which had been

dissolved and were non-existent at the time the later executions had been issued; that the Arthur Gourley company was a trade name of one Arthur Gourley who died in 1918 and his estate had been wound up and his assets distributed to his heirs; that the successive executions which had been issued from time to time designed to keep the judgments alive had been issued without authority and were void.

Issues were joined, and considerable evidence was introduced in plaintiff's behalf (although the competency of part of it was challenged) tending to support the allegations of plaintiff's petition. On the other hand, however, it was shown for defendant that one W. G. Fairchild had been attorney for the plaintiffs in the four cases in which the judgments were entered; that about the time of their rendition the defendant H. Snyder was execution proof; and that Fairchild had kept them alive on the possibility that Snyder would outlive his wife—"their collection depending upon his wife dying before he did so he would *heir* [inherit] her property. She died last spring which made his claims good."

Fairchild claimed an interest in the judgments by an attorney's lien and also by ownership through assignment to him of a half interest. The assignment was made through letters and correspondence, which had been delivered to an attorney for Snyder to satisfy him as to the merits of Fairchild's interest, and this correspondence had been lost. Fairchild testified:

"After the judgments in these cases I made a contract with each and every plaintiff judgment creditor, *by which I was to take the judgment,* collect it and keep it alive and do whatever was necessary and collect it and remit them one-half of what I collected. They were to pay the costs in keeping the judgments alive. They were to pay all costs and they furnished the money for all the costs except the last two executions which I paid myself and expect to charge up to the clients, never having collected it. These contracts were in writing in the form of letters, and the last time I saw the letters they were with these files when I turned them over to Mr. Jones. These letters that I testified to were all in the files which I hold in my hand at the time they were given to Mr. Jones, and upon examination I don't find the letters referred to now in them. That is all."

Fairchild's testimony was supported in part by Attorney Jones who had delivered the correspondence to Snyder's attorney, and in some small measure by the testimony of Snyder's own attorney.

Judgment was entered for defendant and plaintiff appeals. He cites good law to show that an attorney for a judgment creditor

Overland-Reno Co. v. Indemnity Co.

does not have a "power coupled with an interest" in a judgment sufficient to prevent a revocation of the attorney's agency or sufficient to authorize the attorney to procure successive executions to keep alive judgments in favor of defunct corporations or in favor of dead clients. But in our view of the present case, these interesting propositions are not determinative; or, at least, a simpler and more obvious proposition necessarily disposes of the controversy. Fairchild's testimony, supported by some corroborative evidence, showed (or was susceptible of such interpretation) that he had acquired by due assignments a 50 per cent interest in the several judgments themselves. The trial court saw fit to give credence to that testimony ("I was to take the judgment," etc.), so it must now be regarded as a settled fact in this case. And it is likewise the controlling fact. Whether the corporate judgment creditors are alive or dead, or whether Snyder, after the last executions were issued, settled with the pretended representatives of the judgment creditors, is not very material. An assignment of an interest in the judgment itself gives the assignee a right to order out an execution in the name of the original judgment creditor. (Civ. Code, § 119; *Harris v. Frank*, 29 Kan. 200; *Gilmore v. Bank*, 90 Kan. 405, 133 Pac. 726.) By the issuing of successive executions at the instance of one having an interest in them as assignee, the judgments were kept alive, and consequently injunctive relief against the latest executions was properly denied.

Affirmed.