No. 32,728

ANNA RODGERS and R. W. DOCKSTADER, Administrators With the Will Annexed of A. T. Rodges, Deceased, *Appellees*, v. JOSEPH E. SMITH, *Appellant*.

(58 P. 2d 1092)

Opinion filed July 3, 1936.

*C. W. Burch, B. I. Litowich, LaRue Royce, L. E. Clevenger, E. S. Hampton,* all of Salina, and *F. D. Boyce,* of Minneapolis, for the appellant.

*C. L. Kagey,* of Wichita, *Frank A. Lutz* and *A. E. Jordan,* both of Beloit, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This appeal presents questions arising on an order of revivor of a judgment and matters incidental thereto.

It appears that on June 29, 1920, one A. T. Rodgers, a citizen of Mitchell county and a man of considerable means, died testate. He was survived by his widow, Anna Rodgers, and by three minor grandchildren, Noel, Elizabeth and Doris Dockstader.

Rodgers had been twice married. By his first wife he had a daughter Gertrude who married R. W. Dockstader. She was the mother of the three minor grandchildren of the testator. She died before her father.

Anna, the widow, and Dockstader, the son-in-law, were appointed and qualified as administrators of the estate of Rodgers with the will annexed.

There came into their hands as an asset of Rodgers' estate an interest-bearing promissory note for $1,500 executed by one Joseph E. Smith. The administrators reduced this note to judgment on October 10, 1921, in the district court of Mitchell county.

Rodgers' will made generous provision for Anna, his widow, the details of which are of no present concern, further than to quote from item No. 4, which, in part, reads:

"I do hereby give, devise and bequeath to my grandson, Noel Rodgers Dockstader, and to my grand-daughters, Elizabeth Dockstader and Doris Dockstader, of Beloit, Kansas, share and share alike, and to their heirs and assigns forever, all the rest, residue and remainder of my estate, real, personal and mixed, of whatever kind and wheresoever situated."

Another excerpt from Rodgers' will reads:

"If at the time any of the bequests hereinbefore made shall become payable, any of the legatees named shall at such time be minors, the administrator is hereby authorized and empowered to pay the bequest so due and

'owing to said minors, if any, to the respective parents or guardian of such minors."

Preparatory to the closing of the estate, Anna, the widow, on April 13, 1922, executed and acknowledged an instrument, labeled an assignment, which, in part, reads:

"IN THE PROBATE COURT OF SAID [MITCHELL] COUNTY AND STATE

"In the matter of the estate of Alexander T. Rodgers, deceased.,

[Exhibit A]

"ASSIGNMENT

"I, Anna Rodgers, widow of Alexander T. Rodgers, deceased, for a valuable consideration, receipt of which is hereby acknowledged, do by these presents grant, bargain, sell, convey, set over and deliver unto R. W. Dockstader, trustee, his successors and assigns, all my right, title and interest in and to all of the real, personal and mixed property of every kind and nature, and wheresoever situate, of which the said Alexander T. Rodgers (otherwise known and usually called A. T. Rodgers), died seized and possessed, or in which he had any interest at the time of his death and all accumulations and increases thereof and accretions thereto and judgments obtained and rights of action in connection therewith and all of the properties bequeathed and devised to me by the will of Alexander T. Rodgers, except . . . [Properties not involved herein.]

. . . . . . . . . . . . . .

"For the purpose of carrying this assignment into effect, I do for the consideration aforesaid agree to execute, acknowledge and deliver to the said R. W. Dockstader, trustee, such formal instruments of conveyance in the form of deeds, bills of sale, and other assignments, as he may request, covering the specific properties covered by this assignment, and to perform such other acts and execute such other instruments and documents as may be necessary to show a clear record title to the properties hereby assigned, in the said R. W. Dockstader, trustee, and to properly and effectually complete the administration of the estate of said deceased.

. . . . . . . . . . . . .

"It being the intention that I shall have no further interest in said estate or in the properties devised in said will with the exceptions hereinbefore set out. . . . (Signed) ANNA RODGERS."

[Notarial acknowledgment.]

"ACCEPTANCE

"I hereby accept the above assignment, with the understanding that the assignor, Anna Rodgers, shall not be held liable in any way, for any federal estate or inheritance tax or additional state inheritance tax, or any amount due to any revision thereof, and agree that said Anna Rodgers shall not be held liable in any way, as executor of said estate in connection with any matter arising in connection with said estate. (Signed) R. W. DOCKSTADER."

"The above and foregoing instrument approved this 14th day of April, 1922.

"Signed) W. H. CREITZ, *Probate Judge.*

"[Seal of probate court, Mitchell county, Kansas.]"

On May 7, 1922, the administrators presented to the probate court their final account, which showed the judgment against Joseph E. Smith as an item not sold and uncollected, but disposed of thus:

"The said administrators, Anna Rodgers and R. W. Dockstader, further report that by an assignment hereto attached, made a part hereof and marked 'Exhibit A,' dated April 14, 1922, and duly approved by the probate court April 14, 1922, all items not sold and uncollected have been assigned to R. W. Dockstader, trustee."

On June 12, 1922, the administrators' final report was approved and the bondsmen released.

On praecipes filed by the attorneys of record in the action by the administrators against Joseph E. Smith, successive executions were issued by the district court of Mitchell county. The first of these was issued on December 28, 1925, and returned *"nulla bona"* on January 2, 1926. The second execution was issued on January 25, 1930, and a similar return was made the same day.

By November 5, 1930, the three grandchildren of Rodgers had all attained their majority, and on that date they executed separate receipts to R. W. Dockstader, their father (and testamentary trustee of the residual estate devised to them in their grandfather's will), in which they acknowledged full distribution of their respective shares of that estate. At the same time, by negotiations with his three children, Dockstader acquired their entire interest in the judgment against Joseph E. Smith.

On September 5, 1934, Joseph E. Smith died intestate, a resident of Ottawa county, and the probate court of that county appointed LaRue Royce as administrator of his estate. Royce qualified and is still serving in that capacity.

On November 7, 1934, Dockstader filed a claim in the probate court of Ottawa county against Smith's estate based upon the judgment of October 10, 1921. Appended to his claim was a statement which read:

"On the 13th day of April, 1922, as father and natural guardian of the residuary legatees . . . purchased from Anna Rodgers, coadministrator of the estate of A. T. Rodgers . . . all the rest, residue, and remainder of the estate . . . all as shown by an assignment attached to exhibit B and made a part hereof by reference the same as if fully set out herein. . . . On the 5th day of September, 1930, he paid over and delivered to . . . residuary legatees of the will of A. T. Rodgers all property which he held for them as trustee and natural guardian and which was derived from the estate of A. T. Rodgers . . . and took from said legatees receipts showing the payment in full of the property held by him for their use and benefit during

their minority. Said claimant, R. W. Dockstader, further shows to the court that in lieu of the judgment herein taken against the deceased, Joseph E. Smith, he gave to said Elizabeth Dockstader Kagey, Noel Rodgers Dockstader, and Doris Dockstader Rooney securities equal in value to said judgment, and retained the judgment constituting this demand."

While this claim was pending and undetermined in the probate court of Ottawa county, Dockstader on May 15, 1935, filed a motion in the district court of Mitchell county to revive the judgment entered on October 10, 1921, in behalf of the administrators of Rodgers' estate against Joseph E. Smith. In this motion he alleged ownership of the judgment and the facts on which his claim of ownership was based.

Two days later, on May 17, 1935, the probate court of Ottawa county rejected Dockstader's claim against the estate of Smith. Dockstader promptly appealed to the Ottawa county district court from the disallowance of his claim by the probate court, but on August 27, 1935, on his own motion that appeal was dismissed without prejudice.

On June 14, 1935, Dockstader's motion in the district court to revive the judgment of October 10, 1921, against Smith was heard, considered and allowed, following which Dockstader refiled his claim in the probate court of Ottawa county, where, presumably, it is still pending.

The administrator of Smith's estate appeals from the order of the district court of Mitchell county reviving the judgment of that court entered on October 10, 1921. His objections to the order will be considered in the order they are argued in his brief.

Appellant first contends that the judgment of October 10, 1921, became dormant on the final discharge of the administrators of Rodgers' estate on June 12, 1922; and because no steps were taken to revive it within two years, as provided by statute (R. S. 60-3221), the judgment became extinct on June 12, 1924. It may be that if the judgment had been an asset of the estate at the time the estate was closed, dormancy of the judgment would have been the result of the closing of the estate, and the cases cited by appellant seem to confirm that view. But a judgment, like any other asset of an estate, may be sold or otherwise disposed of—and ordinarily should be—before the estate is closed and its administrators discharged. Assuming for the moment that the judgment was effectively transferred to Dockstader as trustee for his children before the estate

was closed, then its vitality was not affected by the closing of the estate on June 12, 1922, nor was there any need of a revivor on that account. In *Gilmore v. Bank*, 90 Kan. 405, 133 Pac. 726, a banking corporation had recovered a judgment against Gilmore. It assigned that judgment to Harpster. Thereafter the corporation was dissolved. Harpster, as assignee of the judgment, caused successive executions to issue without satisfaction. Eventually an issue was raised on the question whether the judgment had become dormant through failure to have it revived in the name of Harpster as assignee. The trial court so held; but this court ruled otherwise, citing and quoting from the early case of *Harris v. Frank*, 29 Kan. 200. (See, also, *Tharp, Administrator, v. Langford, Sheriff*, 115 Kan. 135, 222 Pac. 135.)

The attorneys of record for the plaintiffs who recovered the judgment on October 10, 1921, caused an execution to issue on December 28, 1925, and the sheriff made an unsatisfied return thereon on January 2, 1926. This was within five years of the date of the judgment; and if it was then alive, the effect of that process was to extend its life for five years more. The same attorneys of record filed a praecipe for a second execution four years later, and such execution issued and was returned unsatisfied on January 25, 1930. Five years after that date, on January 25, 1935, the judgment did become dormant; but on May 15, 1935, quite well within the statutory time for such revivor, Dockstader filed his motion in the court which had rendered the judgment (the district court of Mitchell county), and the order of revivor was made on June 14, 1935.

Counsel for the appellant concede that if the judgment did not become dormant on the closing of Rodgers' estate and the discharge of the administrators on June 12, 1922, the attorneys of record would have authority to cause the execution processes to issue, as they did in 1925-1926 and in 1930.

Coming now to the question of Dockstader's claim of ownership: The validity of the order of revivor made by the district court of Mitchell county on June 14, 1935, necessarily depends on the legality of that claim. Counsel for appellee say that Dockstader's claim of ownership was conclusively adjudicated in his favor on an issue of fact squarely joined on that matter. Were the veracity of witnesses or the credibility of testimony the only matters of controlling importance the decision of the trial court on the point would, of course, be conclusive; but here there are no controverted facts. The

question is whether the uncontroverted facts did establish owner-ship in Dockstader so as to enable him to invoke process of revivor of the judgment of 1921.

While the instrument designated "Assignment" and otherwise designated "Exhibit A" may be subject to criticism in respect to form and recitals, it is clear that it was intended to transfer from Anna Rodgers every interest she had in the judgment personally and as administrator, and the probate court so construed and ap-proved it. On the strength of it, it granted to Anna her discharge. It was an express provision of Rodgers' will that if his grandchildren had not attained their majority when his will took effect his admin-istrator was empowered to turn over any bequest "due and owing to said minors, if any, to the respective parents or guardians of such minors," which, as it transpired, was to Dockstader, sole surviving parent and natural guardian of the minor grandchildren and residu-ary beneficiaries of the estate.

There is, to be sure, a talking point that Dockstader never for-mally transferred his official interest in the judgment as adminis-trator to himself as parent and natural guardian of the three children and as trustee thereof under the will; but such in substance was the effect of his final report on the disposition of the judgment, and the probate court's interpretation and its recorded approval thereof. And it is also clear that when the children attained their majority they severally gave Dockstader full acquittance of his trusteeship; and their testimony shows that they had informally assigned their interest in the judgment to him personally. One of them deposed, in part, thus:

"That said R. W. Dockstader made full and final settlement with this affiant and her said sister and said brother in the matter of their guardianship on the 5th day of September, 1930, . . . At the time of said settlement said R. W. Dockstader turned over and delivered to this affiant and her said sister and brother securities and money equal in value to the judgment ren-dered in this case, and affiant and her said sister and brother agreed to relin-quish, and did relinquish, to the said R. W. Dockstader the judgment ren-dered in this matter in lieu of the said securities and moneys turned over to them, . . .

On this showing it must be held that the trial court's finding of Dockstader's ownership of the judgment was sustained by com-petent and sufficient evidence; and as such owner Dockstader had the right to institute proceedings to revive the judgment. In *Tharp, Administrator, v. Langford, Sheriff,* supra, it was said:

"An assignment of an interest in the judgment itself gives the assignee a right to order out an execution in the name of the original judgment creditor. (Civ. Code, § 119; *Harris v. Frank,* 29 Kan. 200; *Gilmore v. Bank,* 90 Kan. 405, 133 Pac. 726.)" (p. 137.)

It is finally argued that the district court of Mitchell county did not have jurisdiction to revive the original judgment. On the contrary, it was the only court which did have such jurisdiction. Certainly no other court than the district court which rendered the judgment would have any right to revive it. In 34 C. J. 664-665 it is said:

"A proceeding to revive a judgment must be brought in the court and county wherein it was rendered." [Citing many authorities.]

The first rejection of Dockstader's claim in the Ottawa county probate court had no substantial bearing on this lawsuit. Presumably the claim was rejected because the judgment was then dormant. What effect the revivor may have on the refiled claim in the Ottawa county probate court is not a question before this court at this time.

The record contains no material error and the judgment is affirmed.

BURCH, C. J., not sitting.